IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:25-157-TDC |
| | * | |
| RICHARD AKOTO, *et al.*, | * | |
| Defendants. | * | |

******

**REPORT AND RECOMMENDATION**

This is a case concerning a doctor allegedly billing Medicaid for medical services he did not provide. Specifically, the United States brings this lawsuit against Defendant Dr. Richard Akoto, M.D., and his business entity Richard O. Akoto, M.D., P.C. (collectively referred to as "Defendants"), alleging Dr. Akoto sought payment using a billing code designated for surgical procedures, when in fact he provided treatment using non-surgical methods. Plaintiff brings claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, as well as common-law torts. Pending before the Court is Plaintiff's Motion for Default Judgment, ECF No. 11, referred to the undersigned's Chambers by Judge Theodore Chuang, ECF No. 12. For the reasons explained below, I recommend that the Motion be granted with an award of $1,407,493.23.

**BACKGROUND**

The Court begins with a brief overview of the relevant statutory scheme before recounting the factual and procedural history.

1

**I. Statutory Scheme**

The Medicare program provides health benefits to "nearly 60 million aged or disabled Americans." *Azar v. Allina Health Servs.*, 587 U.S. 566, 569 (2019). The program is organized into "parts" that the Secretary of Health and Human Services administers through the Centers for Medicare and Medicaid Services ("CMS"). *MSP Recovery Claims, Series LLC v. Lunbeck LLC*, 130 F.4th 91, 99 (4th Cir. 2025); *MacKenzie Med. Supply, Inc. v. Leavitt*, 506 F.3d 341, 343 (4th Cir. 2007). Relevant to this case is Medicare Part B, which "offers government-administered healthcare" in the form of outpatient care, medical professional services, and some durable medical equipment to eligible beneficiaries. *MSP Recovery Claims*, 130 F.4th at 99; 42 U.S.C. § 1395k.

Medicare only covers healthcare that is "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). CMS delegates its authority to administer healthcare benefits to Medicare Administrative Contractors ("MACs") which process claims within a particular geographic jurisdiction.[1] *Id.* at § 1395kk-1; 42 C.F.R. § 420.104 (2025). MACs are bound by CMS's rules and regulations, including National Coverage Determinations ("NCDs") which are legally binding determinations detailing "whether or not a particular item or service is covered nationally" by Medicare. 42 U.S.C. § 1395ff(f)(1)(B), 1395kk-1(a)(4). MACs also issue guidance documents known as Local Coverage Articles, that educate providers about proper coding of expenses and submission of claims; these documents also provide more detailed interpretations of NCDs and LCDs. ECF No. 1, at 9.

---

[1] *See* Ctrs. for Medicare & Medicaid Servs., What's a Mac, https://perma.cc/6GEE-7K6L (explaining that MACs are private health care insurers that "serve as the primary operation contact between [] Medicare . . . and [] health care providers enrolled in the program.").

To participate in the Medicare program, a medical provider must submit a Medicare Enrollment Application, which requires the provider sign a "Certification Statement" that "legally and financially binds [the] [provider] to the laws, regulations, and program instructions of the Medicare program." [2] *Id.* at 5. Further, each time a provider submits a claim, they must certify that their "claims are accurate, complete, and truthful," and that "services were performed as billed." *Id.* at 7-8.

## II. Factual Background

Dr. Akoto is a licensed physician in Maryland, where he practices primary care and family medicine. *Id.* at 3. He was enrolled as a Medicare provider at the time of the relevant events, meaning he agreed to comply with all of the program's rules and regulations as detailed above. *Id.* at 6.

Between January 2019 and May 2019, Defendant treated numerous patients with a DyAnsys ANSiStim—or a substantially similar—device. *Id.* at 10. The device is placed behind a patient's ear with an adhesive, where it then performs electrical periphery nerve stimulation. *See id.* at 1-2, 12, 14-15. When billing Medicare for this treatment, Dr. Akoto used the code L8679— applicable to "implantable neurostimulator pulse generator[s]." *Id.* at 10, 11.

At the time Dr. Akoto billed for these treatments, multiple Medicare regulations required that any device billed under L8679 be implanted. *Id.* at 11 ("The code descriptor is '[i]mplantable neurostimulator, pulse generator, any type,' . . . indicating that the device must be 'implantable.'"). A nationally applicable NCD states that Medicare will only cover and pay for electrical nerve

---

[2] As Plaintiff notes, "[i]n the relevant regulations, physicians and other practitioners are generally referred to as 'suppliers' rather than 'providers.'" ECF No. 1, at 5 n.1. The Complaint utilizes the term "provider" to refer to healthcare practitioners; *id.*, this Report adopts the same terminology.

3

stimulators that are "implant[ed] . . . around a selected peripheral nerve" which "requires surgery and usually necessitates an operating room." *Id.* at 12 (citing Ctrs. for Medicare & Medicaid Servs., Nat'l Coverage Determination for Electrical Nerve Stimulators, Pub. No. 100-3 § 160.7 (eff. Aug. 7, 1995) ("NCD 160.7")).[3] Further, the MAC overseeing Dr. Akoto's region—Novitas Solutions, Inc. ("Novitas")—issued a Local Coverage Article on the topic of "Auricular Peripheral Nerve Stimulation" which explicitly stated that Medicare does not cover certain non-implanted devices that perform peripheral nerve stimulation. *Id.* at 5, 12-13 ("The following devices . . . are ***non-covered*** . . . [including] ANSiStim" (quoting Novitas, Billing & Coding: Auricular Peripheral Nerve Stimulation (Electro-Acupuncture Device) (eff. Aug. 11, 2016))).[4]

   Dr. Akoto submitted thirty-six claims pursuant to code L8679, seeking $9,000 in reimbursement for each. *Id.* at 14. The Complaint provides two illustrative examples. On February 14, 2019, Dr. Akoto saw a patient suffering from chronic lower back pain. *Id.* Dr. Akoto's records indicate that he suggested the DeAnsys device as treatment. *Id.* Then, "a male assistant in [his] office" "prepared" the right ear and "adhered" "the percutaneous neurostimulator . . . to the skin." *Id.* at 14-15. The patient later "removed the DyAnsys Device by herself at home within three-to-four days of its placement." *Id.* at 15. Similarly, on April 16, 2019, Dr. Akoto saw a patient complaining of "chronic neck and upper back pain." *Id.* at 16. Dr. Akoto suggested the DeAnysys device as treatment, and a staff person "adhered [the device] to the skin," later "cover[ing] [it] with an adhesive band-aid." *Id.* at 16. This patient also removed the device "by herself, the same day it was applied in Dr. Akoto's office, because it was bothering

---

[3] Available at https://perma.cc/H4FX-NE2Y.
[4] Available at https://perma.cc/7EXE-KSBV.

her." *Id.* In both instances, Dr. Akoto billed Medicaid using code L8679. *Id.* at 14, 16. Medicare paid Dr. Akoto $6,378.27 for each visit. *Id.* at 15-16. In total, Medicare paid $229,164.41 for all thirty-six claims. *Id.* at 17.

### III. Procedural Background

Plaintiff brought the present lawsuit on January 15, 2025, raising violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B), common law fraud, payment by mistake, and unjust enrichment. ECF No. 1, at 17-21. Plaintiff seeks to recover damages, the maximum civil penalties allowed by law, interest, costs, and expenses. *Id.* at 21.

On the same day, a summons was issued to Defendants. ECF No. 3. The summons was returned executed on March 4, 2025, indicating that Defendants had been served on January 22, 2025, via certified mail. ECF No. 5, 5-1. Defendants' response was due on or before February 12, 2025, but Defendants failed to make an appearance or otherwise answer the Complaint.

On March 25, 2025, Plaintiff moved for a Clerk's Entry of Default against Defendants, ECF No. 7, and the Clerk entered an Order of Default against Defendants. ECF Nos. 9, 10. Notice of the Clerk's Order was issued to Defendants. ECF Nos. 9, 10. On April 8, 2025, Plaintiff moved for Default Judgment against Defendants in the amount of $1,407,493.23, pursuant to the FCA. ECF No. 11, at 1. This figure is the sum of $229,164.41 in damages, $687,493.23 in treble damages, and $720,000 in penalties. *Id.* In support, Plaintiff attached a declaration from an investigator in the Civil Division of the United States Attorney's Office for the District of Maryland who had participated in the investigation into Dr. Akoto. ECF No. 11-1.

On April 25, 2025, Defendants filed a correspondence on the docket stating the parties were "in a process of reaching settlement." ECF No. 13. The Court then ordered the submission

5

of "a Joint Status Report updating the Court on settlement negotiations" by May 27, 2025. ECF No. 14. In the intervening weeks, Plaintiff's counsel discussed possible settlement with Dr. Akoto and sent him a proposed Settlement Agreement. ECF No. 15, at 1-2; ECF No. 15-1. Despite counsel's consistent outreach, "Dr. Akoto has not responded to . . . phone calls" or otherwise contacted Plaintiff. ECF No. 15, at 2. Plaintiff's counsel further asserts that Dr. Akoto's silence "is nothing new," as Dr. Akoto previously "delayed the Government's investigation" of these issues and "stalled settlement talks" for several years. *Id.* In light of these circumstances, Plaintiff requested that the Court rule on its Motion for Default Judgment without further delay. *Id.* at 2.

Next, the Court scheduled an in-person hearing on the Motion for Default Judgement. ECF No. 16. The Clerk's Office mailed notice of the hearing to Defendants, but they did not appear. *Id.* During the hearing, Plaintiff's counsel stated that he had been unable to contact Defendants since April, despite making numerous phone calls and repeatedly mailing relevant documents.

As of the date of this Report and Recommendation, Defendants have not filed any responsive pleading, nor have they otherwise contacted the Court since the April correspondence.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which the Clerk of the Court may enter "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). The entry of default judgment is left to the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United*

6

*States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421). Default judgment is proper where a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896-97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one related to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards the United States Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g., Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972 at *2-3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832 at *2-3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544-45 (D. Md. 2011). Where a complaint offers only "labels and conclusions" or "naked

7

assertion[s] devoid of further factual enhancement," the allegations therein are not well-pled and, consistent with the Court's discretion to grant default judgment, relief based on those allegations should be denied. *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544–45 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

However, because each of Plaintiff's claims "are based on allegations of fraud" the Complaint "must . . . satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *United States ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472, 485 (4th Cir. 2025). Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake, though knowledge may be alleged generally." *Id.* (quoting *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022)) (internal quotation marks omitted). "To meet this standard, a FCA plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

## DISCUSSION

### I.     Jurisdiction

The Court must first assure itself that it has subject-matter jurisdiction over the claim. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists."). The Court has jurisdiction over Plaintiff's FCA claims because they arise under federal law. *See* 28 U.S.C. § 1331. Plaintiff's common-law

tort claims arise from the same common nucleus of facts, such that the two claims "form part of the same case or controversy" in a manner that allows this Court to exercise supplemental jurisdiction. 28 U.S.C. § 1367(a); *see United States ex rel. Schnupp v. Blair Pharm.*, No. ELH-17-2335, 2024 WL 4108591, at *1, *16-17 (D. Md. Sept. 5, 2024) (exercising supplemental jurisdiction over FCA claims and common law state claims because each "derive[d] from a common nucleus of operative fact" (quoting *Isaac v. North Carolina Dep't of Transp.*, 192 F. App'x 197, 199 (4th Cir. 2006))).[5]

## II. Default Judgment is Appropriate

Defendants are "essentially unresponsive" and have "halted" "the adversary process" by their lack of participation in this litigation. *Lawbaugh*, 359 F. Supp. 2d at 421. They failed to file any responsive pleading, despite repeated attempts by Plaintiff's counsel and the Court to contact them. After Defendants' April correspondence on the docket indicating interest in settlement, the Court gave the parties twenty-one days to provide a status update. ECF No. 14. In that time, Defendants ceased communications with Plaintiff's counsel. ECF No. 15. The Court then scheduled a Motions hearing for June 12, 2025, and provided notice to Defendants. ECF No. 16. They did not appear at the hearing. Accordingly, Defendants have failed to defend the lawsuit and the Court may grant default judgment. *See United States v. Zen Enters., Inc.*, No. DKC-19-3294, 2021 WL 3112931, at *1-2 (D. Md. July 22, 2021) (granting default judgment where Defendants filed "two requests for additional time" but were otherwise "entirely nonresponsive"); *Trs. of Nat'l*

---

[5] The Court need not address whether venue is proper because "[a] defendant waives a venue objection by defaulting." 14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3829 (4th ed. 2024) (citing *Comm. Cas. Ins. Co. v. Consol. Stone Co.*, 278 U.S. 177, 180-81 (1929)); *see Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (same).

9

*Automatic Sprinkler Indus. Welfare Fund v. Fire Water Sprinkler Prot. LLC*, No. TDC-24-2172, 2025 WL 1111221, at *3 (D. Md. Apr. 15, 2025) (granting default judgment where Defendants failed to oppose motion or otherwise defend the lawsuit, despite indications that Defendants previously expressed interest in settlement).

### III.     Liability

Plaintiff establishes liability for its claims under the FCA.  "In light of th[is] conclusion[] . . . there is no need to address the Government's common law claim[s]" for fraud, payment by mistake, and unjust enrichment because they are "duplicative" and "seek[] the same relief."  *United States v. Fadul*, No. DKC-11-385, 2013 WL 781614, at *14 (D. Md. Feb. 28, 2013).[6]

Plaintiff brings two claims under the FCA: "a 'presentment claim' under 31 U.S.C. § 3729(a)(1)(A)[] [and] a false-record-or-false-statement claim under § 3729(a)(1)(B)."  *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 193 (4th Cir. 2022); ECF No. 1, at 17-19.  "Roughly speaking, a presentment claim alleges that a defendant knowingly submitted a false claim to the government themselves" whereas "[a] false-record-or-statement claim alleges that a defendant knowingly made a false statement or produced a false record material to a false claim."  *Id.*; 31 U.S.C. § 3729(a)(1)(A), (B).

For both claims, a plaintiff must allege the same four elements: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due

---

[6] Additionally, during the June 12, 2025, hearing, Plaintiff clarified that it seeks default judgment only on its FCA claims.

(i.e., that involved a 'claim')." *Boyko*, 39 F.4th at 188 (quoting *Harrison*, 176 F.3d at 788). To meet the applicable heightened pleading standard, a plaintiff can describe "a representative example [detailing] 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Nicholson*, 42 F.4th at 194 (quoting *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018)). Plaintiff sufficiently alleges FCA violations under both theories regarding Dr. Akoto's billing for thirty-six DeAnysys ANSisStim devices.

Plaintiff sufficiently alleges Dr. Akoto made false statements. For purposes of the FCA, a false claim "encompass[es] any 'words or conduct' that 'amount[] to an assertion not in accordance with the truth.'" *Wheeler*, 127 F.4th at 487 (quoting *Taylor*, 39 F.4th at 200). Plaintiff alleges that Dr. Akoto billed Medicare pursuant to HCPCS Code L8679 for the service of affixing the DyAnsys ANSiStim device to his patients. The alleged false statements consist of use of an inaccurate billing code and certifications on Medicare forms asserting compliance with all applicable laws and regulations. ECF No. 1, at 18-19; *see Wheeler*, 127 F.4th at 493 (reasoning submission of false claims for payment from government agencies supports an FCA false statement claim). Put another way, this billing constituted a statement that Dr. Akoto had surgically implanted the device, when in fact he had merely affixed it behind his patient's ear using an adhesive. That amounts to "[u]pcoding, a common form of Medicare fraud" that entails "billing Medicare for medical services or equipment designated under a code that is more expensive than what a patient actually needed or was provided." *United States v. Kernan Hosp.*, No. RDB-11-2961, 2012 WL 5879133, at *1 n.2 (D. Md. Nov. 20, 2012) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 637 n.3 (6th Cir. 2003)).

Plaintiff also alleges Dr. Akoto acted with an adequate scienter. "[A] person acts with the requisite scienter if they . . . have 'actual knowledge of the [falsity of the] information' . . . [or] act 'in deliberate ignorance of the truth or falsity of the information.'" *Taylor*, 39 F.4th at 197 (quoting 31 U.S.C. § 3729(b)(1)(A)). Such allegations of "knowledge, and other conditions of a person's mind" may be made "generally." Fed. R. Civ. P. 9(b). Plaintiff has done so here—stating "Dr. Akoto knew the[] claims were false because [he] did not perform surgery to implant a neurostimulator." ECF No. 1, at 14. The Complaint further bolsters these allegations by establishing that Dr. Akoto—along with every Medicare provider—must continually affirm compliance with Medicare and MAC guidelines and instructions. *Id.* at 7-8 (explaining each provider certifies compliance with "the laws, regulations, and program instructions of Medicare" when submitting claims), 8 ("Providing accurate . . . [billing] codes in claims is material to, and a condition of, payment for Medicare" (citing Ctrs. for Medicare & Medicaid Servs., Medicare Billing 837P & Form CMS-1500 (Mar. 2013))).[7] Importantly, the applicable MAC issued a Billing and Coding Article prior to Dr. Akoto's submission of claims explicitly stating ANSiStim devices of the type used here were "**non-covered**." *Id.* at 13 (emphasis in original). The Complaint alleges that he "ignored the clear and consistent guidance provided by Medicare and its contractors regarding when it was appropriate to bill L8679." *Id.* at 14.

Plaintiff sufficiently alleges that the statements at issue were material. "For purposes of the False Claims Act, materiality means 'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" *Wheeler*, 127 F.4th at 488 (quoting 31 U.S.C. § 3729(b)(4)). A false statement is material if the government would not have paid a

---

[7] Available at https://perma.cc/9K84-F57C.

Medicare claim had it been aware of the truth. *Id.* at 490; *Taylor*, 39 F.4th at 191 (explaining "allegations 'that the Government *consistently* refuses to pay claims in the mine run of cases . . .' can establish materiality" (quoting *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 195 (2016))). Generally, Plaintiff alleges that accurate billing codes are "material to, and a condition of, payment for Medicare." ECF No. 1, at 8. The United States also makes clear that if it had "known that Dr. Akoto was fraudulently billing for his use of non-implantable devices, [it] would not have paid Dr. Akoto **anything**." *Id.* at 2 (emphasis in original).

Finally, Plaintiff sufficiently alleges that the false statements caused the government to pay money. "To trigger liability under the Act, a claim actually must have been submitted to the federal government for reimbursement, resulting in 'a call upon the government fisc.'" *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013) (quoting *Harrison*, 176 F.3d at 785). Medicare paid Dr. Akoto for thirty-six claims totaling $229,164.41. ECF No. 1, at 17; ECF No. 1-1. There is no ambiguity—Dr. Akoto billed the government and it distributed monies. *Cf. United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 687 (D. Md. 2012) (dismissing a FCA claim because the Complaint did not include allegations "that the[] fraudulent diagnoses made their way to cost reports submitted to the [government] and actually caused the [government] to pay [the defendant] for services not rendered").

### IV.  Damages

"[U]pon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Pandora Jewelry, LLC v. Anna's of Lakeland, LLC*, No. JRR-24-1303, 2024 WL 4284686, at *4 (D. Md. Sept. 25, 2024) (quoting *Hanover Ins. Co. v. Persaud Cos., Inc.*, No. GJH-13-472, 2015 WL 4496448, at *3 (D. Md. July 22, 2015)).

Accordingly, "the Court must make an independent determination regarding damages allegations," either by conducting an evidentiary hearing or by examining the evidence in the record. *Id.* Documentary evidence, including billing records or invoices, can meet this standard. *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010); *Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669, 691 (D. Md. 2024) (concluding that an invoice detailing unpaid charges sufficiently supported the damages total).

The FCA provides that any person who violates Section 3729(a)(1)—like Defendants—is liable for "[three] times the amount of damages which the Government sustains because of the act of that person," plus additional mandatory civil penalties. 31 U.S.C. § 3729(a)(1).[8] Typically, damages are measured as "the amount of money the government paid by reason of the false statement above what it would have paid absent the false statement." *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922-23 (4th Cir. 2003).[9]

The spreadsheet attached to Plaintiffs' Complaint provides sufficient evidence to establish the amount of damages the false statements caused. A member of the team that investigated Dr. Akoto's billing practices authored the document. ECF No. 11-1, at 1. It summarizes Dr. Akoto's billing to Medicare for Code L8679, specifying the dates claims were submitted, the amount billed,

---

[8] Treble damages are mandatory unless a defendant qualifies under a statutory exception for persons that voluntarily disclose violations and then cooperate with any Government investigation. 31 U.S.C. § 3729(a)(2). None of the allegations in the Complaint suggest the exception is applicable here. *See generally* ECF No. 1.

[9] Although the Fourth Circuit "ha[s] not adopted one particular standard by which damages should be measured under the FCA," it has approved of this method, noting it "is consistent with the text of the FCA, which provides for recovery of 'damages which the Government sustains because of the act of' the defendant." *Harrison*, 352 F.2d at 922-23 (quoting 31 U.S.C. § 3729(a)).

and the amount Medicare ultimately disbursed. ECF No. 1-1. The document establishes that Plaintiff paid $229,164.41 due to allegedly fraudulent billing. *Id.* "Because the documentary evidence is consistent within itself and with the amount sought in the . . . [C]omplaint, the record supports [Plaintiff's] request" for $229,164.41 in damages. *Concentric Methods, LLC v. Cillian Techs., LLC*, No. DKC-11-1130, 2011 WL 6180143, at *2 (D. Md. Dec. 12, 2011). Plaintiff is also entitled to $229,164.41 trebled, as required by statute, amounting to an additional $687,493.23.

Federal law also entitles Plaintiff to a civil penalty ranging from $13,946 to $27,894 per violation. 31 U.S.C. 3729(a) (requiring civil penalties "as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990"); 28 C.F.R. 85.5(a), tbl. 1 (2025) (setting penalty for violations of the FCA assessed after February 12, 2024, at a minimum of $13,946 and maximum of $27,894); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 407 (4th Cir. 2013) (explaining each false claim requires its own civil penalty). "[T]he civil penalty is completely punitive." *United States ex rel. Drakeford,* 792 F.3d 364, 388 (4th Cir. 2015). The appropriate amount within the set range is otherwise subject to the Court's discretion and consideration of the totality of the circumstances.[10] *See id.*; *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003); *United States ex rel. Miller v. Bill Harbert Int'l Constr. Inc.*, 501 F. Supp. 2d 51, 56-57 (D.D.C. 2007) (determining an appropriate penalty by "considering the totality of the circumstances, including such factors as the seriousness of the misconduct, the scienter of the

---

[10] FCA civil penalties can accumulate to large sums and can be limited by the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment when they are grossly excessive, but the Fourth Circuit has stated that such circumstances are rare. *Drakeford,* 792 F.3d at 387-88.

defendants, and the amount of damages suffered by the United States as a result of the misconduct").

Here, Plaintiff's request of $20,000—a figure close to the midpoint—is reasonable. The Complaint does not detail any aggravating or mitigating circumstances compelling relief or further punitive punishment. *See, e.g. BMY—Combat Sys. Div. of Harsco Corp. v. United States*, 44 Fed. Cl. 141, 151 (Aug. 13, 1998) ("[T]he court will tend to lean towards the more severe penalty the longer these proceedings are drawn out without [Defendant] accepting responsibility for its fraud."). Accordingly, the Court recommends an award of $720,000 in civil penalties: the sum of $20,000 multiplied by thirty-six claims.

Lastly, "an award of post-judgment interest need not be specifically granted because a plaintiff is entitled to recover such interest by operation of law." *Concentric Methods, LLC*, 2011 WL 6180143, at *2 (citing 28 U.S.C. § 1961(a)). I recommend that the Court decline to award such relief at this time. *See Iraola Grp. Inv. v. TIMD-20, LLC.*, No. GJH-21-820, 2022 WL 4448860, at *6 (D. Md. Sept. 23, 2022).

## CONCLUSION

For the aforementioned reasons, it is recommended that Plaintiff's Motion for Default Judgment, ECF No. 11, be granted in the amount of $1,407,493.23.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

So ordered.

Date: June 18, 2025
                             /s/
                        Ajmel A. Quereshi
                        U.S. Magistrate Judge